IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| **BERKLEY ASSURANCE COMPANY,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **EP-14-CV-00135-DCG** |
| | § | |
| **JULIO CESAR SERRANO and** | § | |
| **CONSONANTS, LLC, doing business as** | § | |
| **TRICKY FALLS,** | § | |
| | § | |
| **Defendants.** | § | |

MEMORANDUM OPINION AND
ORDER GRANTING DEFAULT JUDGMENT

Presently before the Court is Plaintiff Berkeley Assurance Company's ("Plaintiff") "Motion for Default Judgment Against Defendant Consonants, LLC D/B/A Tricky Falls" (ECF No. 16) ("Motion"), filed on August 14, 2014. Plaintiff requests the Court to enter a default judgment pursuant to Federal Rule of Civil Procedure 55 against Defendant Consonants, LLC, D/B/A Tricky Falls ("Defendant"). Mot. 2. After considering the Motion, the record, and the applicable law, the Court concludes Plaintiff is entitled to the requested relief, and therefore, the Court will render a default judgment against Defendant.

## I. BACKGROUND

Plaintiff is an eligible surplus lines insurer in the state of Texas. Compl. ¶ 2.1, ECF No. 1. It commenced suit on April 15, 2014, seeking a declaratory judgment that it has no duty, under a commercial general liability policy issued to Defendant, to defend and/or indemnify Defendant against the claims raised in the suit styled *Julio Cesar Serrano v. Tricky Falls*, No. 2014–DCV–0124, in the 168th Judicial District Court of El Paso County, Texas (the "Underlying Lawsuit"). *Id.* ¶ 1.1. Thereafter, on April 15, 2014, Plaintiff requested issuance of summons and that same day, the Clerk of

the Court issued a summons to each of the Defendants.[1]  *See* ECF Nos. 4, 5, 6.  Plaintiff properly

served Defendant with the summons on May 15, 2014.  *See* Proof of Service 2, ECF No. 8.  To date,

Defendant has not answered Plaintiff's Complaint in accordance with Federal Rule of Civil Procedure

12[2] or otherwise appeared in this case.

On July 8, 2014, Plaintiff filed its "Request for Clerk's Entry of Default Against Defendant

Consonants, LLC, d/b/a Tricky Falls" (ECF No. 13).  On July 9, 2014, the Clerk of the Court entered

default against Defendant pursuant to Federal Rule of Civil Procedure 55(a).  *See* Entry of Default,

ECF No. 14.  Plaintiff subsequently filed the instant Motion on August 14, 2014.

## II.  APPLICABLE LAW

The Clerk of the Court must enter default if a party fails to plead or otherwise defend, and the

moving party shows that failure by affidavit or otherwise.  *See* Fed. R. Civ. P. 55(a).  After the Clerk

enters default, a party may move for a default judgment.  *See* Fed. R. Civ. P. 55(b); *New York Life Ins.*

*Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996).  Rule 55 of the Federal Rules of Civil Procedure

provides that, following entry of default by the Clerk of the Court, a court can enter a default judgment

when the "plaintiff's claim is [not] for a sum certain or a sum that can be made certain by

computation."  Fed. R. Civ. P. 55(b)(1).

In all other cases, a party must petition the court to enter default judgment if there is "a

sufficient basis in the pleadings for the judgment entered."  *Nishimatsu Constr. Co., LTD. v. Houston*

*Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (footnote omitted).  "The defendant, by his default,

admits the plaintiff's well–pleaded allegations of fact, is concluded on those facts by the judgment, and

is barred from contesting on appeal the facts thus established."  *Id.*  (citations omitted).  When

---

[1]  Plaintiff also was issued summons to serve Defendant Julio Cesar Serrano ("Serrano"), the plaintiff in the Underlying Suit, who has since been voluntarily dismissed from this action.  *See* Order Dismissing Def. Julio Cesar Serrano, ECF No. 19.

[2]  Federal Rule of Civil Procedure 12 provides that unless a different time is prescribed by federal statute a defendant shall serve an answer within twenty-one days after being served with the summons and complaint. Fed. R. Civ. P. 12(a)(1)(A)(i).

reviewing a motion for default judgment, a court takes the plaintiff's well–pleaded factual allegations as true, excluding monetary damages. *See United States ex rel. M–CO Constr., Inc. v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987).

Here, Plaintiff's claim is not for a monetary sum; it seeks declaratory relief. *See* Compl. ¶¶ 1.1, 6.1–6.2. The Court may grant a default judgment when a properly served defendant fails to respond to a complaint for declaratory relief. S*ee Fid. & Guar. Life Ins. Co. v. Unknown Tr. of Revocable Trust – 8407*, No. CIV.A. 13–CV–412–PRM, 2014 WL 2091257, at *3 (W.D. Tex. May 16, 2014) (awarding default judgment in declaratory judgment action); *Taylor v. City of Baton Rouge*, No. CIV.A. 13–00579–BAJ, 2014 WL 4177275, at *3 (M.D. La. Aug. 25, 2014) (same).

However, a party seeking a default judgment is "not entitled to [it] as a matter of right, even where the defendant is technically in default." *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996). "Default judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations." *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989) (citing *Charlton L. Davis & Co. P.C. v. Fedder Data Center*, 556 F.2d 308, 309 (5th Cir. 1977); *E.F. Hutton & Co., Inc. v. Moffatt*, 460 F.2d 284, 285 (5th Cir. 1972)). A court should grant default judgment "only when the adversary process has been halted because of an essentially unresponsive party." *Id.* (quoting *H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C. Cir. 1970) (per curiam)). This policy is "counterbalanced by considerations of social goals, justice and expediency, a weighing process [that] lies largely within the domain of the trial judge's discretion." *Roger v. Hartford Life & Acc. Ins. Co.*, 167 F.3d 933, 936 (5th Cir. 1999) (alteration in original) (citations and internal quotations omitted). Therefore, the Court must determine whether a default judgment would be proper under the circumstances of this case. *See* Fed. R. Civ. P. 55(b)(2).

### III.  DISCUSSION

Courts engage in a two–part analysis in order to determine whether a default judgment should be entered against a defendant. *See Fid. & Guar. Life Ins. Co.*, 2014 WL 2091257, at *2 (citations omitted).   In the first step, the Courts assesses whether entering default judgment is appropriate by considering six factors. *Id.*  If the Court finds that entering default judgment is appropriate under the specific circumstances of the case, the court then assesses the merits of the claim to determine if there is a sufficient basis in the pleadings for the judgment. *Id.* (citing *Nihimatsu*, 515 F.2d at 1206).

*A.  Whether Default Judgment is Appropriate*

Courts initially assesses whether entering default judgment is appropriate by considering six factors: (1) "whether material issues of fact are at issue, (2) whether there has been substantial prejudice, (3) whether the grounds for default are clearly established, [(4)] whether the default was caused by a good faith mistake or excusable neglect, [(5)] the harshness of a default judgment, and [(6)] whether the court would think itself obliged to set aside the default on the defendant's motion." *Id.* at 2 (quoting *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998)).

Applying these factors to the instant case, the Court finds that default judgment is appropriate in this matter.  Defendant has not filed any responsive pleadings, and thus there are no material facts in dispute. *See Nihimatsu*, 515 F.2d at 1206.  Defendant has failed to respond in the seven months' time since it was served, resulting in prejudice to Plaintiff's interests by bringing the adversary process to a halt.  Additionally, the grounds for default judgment against Defendant are clearly established, as Plaintiff seeks a declaration that it has no duty to defend or indemnify Defendant in the Underlying Action. *See Fid. & Guar. Life Ins. Co.*, 2014 WL 2091257, at *2 (citing *Ins. Co. of the W. v. H & G Contractors, Inc.*, No. CIV.A. C-10-390, 2011 WL 4738197 (S.D. Tex. Oct. 5, 2011)).  There is no evidence to indicate that the default was caused by "good faith or excusable neglect" and Defendant's failure to file a responsive pleading or otherwise defend the instant lawsuit for more than seven months

- 4 -

mitigates the harshness of the default judgment. *See Lindsey*, 161 F.3d at 893. Finally, the Court is not aware of any facts that would give rise to "good cause" to set aside the default judgment if challenged by Defendant.

B.   *Whether Defendant States a Viable Claim for Relief Regarding Its Duty to Defend*

Having determined that default judgment is appropriate, the Court now considers whether Plaintiff's pleadings establish a viable claim for relief. The case arises from an insurance coverage dispute. Plaintiff seeks a declaration that it has no duty to defend and/or indemnify insured Defendant against the claims raised in the Underlying Lawsuit. In Texas, courts apply the "eight–corners" rule when deciding whether an insurer owes a duty to defend. *See GuideOne Ins. Co. v. House of Yahweh*, 828 F. Supp. 2d 859, 861 (N.D. Tex. 2011) (citing *Potomac Ins. Co. v. Jayhawk Med. Acceptance Corp.*, 198 F.3d 548, 551 (5th Cir. 2000)). Under the "eight–corners rule," an insurer's duty to defend arises if the insured is sued and the complaint alleges facts that are potentially covered. *See Nat'l Union Fire Ins. Co. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997). In "reviewing the underlying pleadings, the court must focus on the factual allegations that show the origin of the damages rather than on the legal theories alleged." *Id.* (citations omitted). If the pleadings alone do not allege facts within the scope of coverage, the insurer is not legally required to defend. *Id.* However, "in case of doubt as to whether or not the allegations of a complaint against the insured state a cause of action within the coverage of a liability policy sufficient to compel the insurer to defend the action, such doubt will be resolved in insured's favor." *Id.* (quoting *Heyden Newport Chem. Corp. v. S. Gen. Ins. Co.*, 387 S.W.2d 22, 26 (Tex. 1965). The burden to establish coverage under an insurance policy rests with the insured. *See Guar. Nat'l Ins. Co. v. Vic Mfg. Co.*, 143 F.3d 192, 193 (5th Cir. 1998) (citing *Telepak v. United Servs. Auto. Ass'n*, 887 S.W.2d 506, 507 (Tex. Civ. App.—San Antonio 1994, writ denied)); *see also Emp'rs Cas. Co. v. Block*, 744 S.W.2d 940, 944 (Tex. 1988), *overruled in part on other grounds*, *State Farm Fire & Cas. Co. v. Gandy*, 925 S.W.2d

696 (Tex. 1996). Conversely, the burden to establish the applicability of the exclusions under an insurance policy rests with the insurer. *See Guar. Nat'l*, 143 F.3d at 193.

### 1. Whether Any of the Policy Coverages Apply

Below are the facts alleged by Serrano in the Underlying Suit:

On or about October 22, 2013, [Serrano] was a patron at Defendant's place of business . . . . Throughout the night, there were security personnel at the bar, but no metal detectors or searches of patrons for dangerous weapons were employed. . . . [Serrano] was standing at the bar . . . . Next to [Serrano] was another patron, who was visibly intoxicated and drinking . . . . Suddenly and without warning, the other patron turned and cut [Serrano's] throat, then turned to his right and attempted to do the same to another patron. . . . [Serrano sustained injuries]: including a laceration to his neck and injury to his trachea requiring a tracheostomy.

Mot. Ex. A at BERK 003.[3] Here, the insurance policy at issue is a general liability insurance policy issued for the period from September 13, 2013 to September 13, 2014 ("the Berkley policy"). Mot. Ex B at BERK 027. The policy coverage includes bodily injury and property damage liability ("Coverage A"); personal and advertising injury liability ("Coverage B"); and medical payments ("Coverage C"). *Id.* at BERK 034, 038, 040.

Coverage A applies if: "(1) [t]he 'bodily injury' . . . [was] caused by an 'occurrence' that [took] place in the 'coverage territory'; (2) [t]he 'bodily injury' . . . [occurred] during the policy period"; and (3) it is not a re–aggravation or continuation of an injury that was suffered prior to the coverage period and was known by a listed insured or authorized employee prior to the policy period.[4] *Id.* at BERK 034. It is apparent from the face of the complaint in the Underlying Suit that the incident in question was a bodily injury that occurred within the United States during the policy coverage period. Coverage A therefore applies, subject to the application of any exclusion.

---

[3] When referencing specific page numbers in Plaintiff's exhibits, the Court adopts the internal "BERK" paginations.

[4] The policy defines "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." *Id.* at BERK 045. The policy defines "occurrence" to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Mot. Ex B. at BERK 047. The policy defines "coverage territory" as including the United States of America. *Id.* at BERK 045.

Coverage B applies to "sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury' . . . ." *Id.* at BERK 038. These are injuries, including "bodily injuries" that arise from specific enumerated offenses, such as false arrest, malicious prosecution, or wrongful eviction. *See id.* at BERK 047 (listing all of the offenses to which this section applies). None of the listed offenses are alleged in the Underlying Suit. Consequently, Coverage B does not apply.

Plaintiff is obligated to pay medical expenses under Coverage C for "bodily injury" caused by an accident on premises owned or rented by the insured, provided that (1) the accident occurred in the United States and during the policy period; (2) the expenses are incurred and reported by the insured within one year of the date of the accident; and (3) the injured person submits to examination. *Id.* at BERK 040. Coverage C applies "regardless of fault." *Id.* Although it is apparent from the complaint in the Underlying Suit that the accident occurred in the United States and during the policy period, it is not apparent from that complaint that the other two elements were met. Because it is the insureds burden to establish policy coverage, and the insured has not carried its burden, the Court finds that Coverage C does not apply.

## 2. Whether Any of the Policy Exclusions Apply

Having determined that at least one provision of the policy applies, Plaintiff only states a viable claim if it carries its burden of establishing that a policy exclusion applies. *See Guar. Nat'l*, 143 F.3d at 193. The general liability coverage is subject to a number of exclusions. Plaintiff states that the following exclusions apply: Firearms and Weapons Exclusion; Assault and/or Battery, Abuse and/or Molestation Exclusion; and a Total Liquor Liability Exclusion. *See* Compl. ¶¶ 5.2–5.8; Mot. 9–12. By its default, Defendant has admitted the truth of Plaintiff's well–pleaded allegations. *See Nihimatsu*, 515 F.2d at 1206 (noting that "[t]he defendant, by his default, admits the plaintiff's well–pleaded allegations of fact"). After reviewing the pertinent provisions, the Court concludes that

- 7 -

the exclusions apply to the claims asserted.

a.   Firearms and Weapons Exclusion

> The Firearms and Weapons Exclusion provides, in pertinent part:

> The coverage under this policy does not apply to "bodily injury", "property damage", "personal injury and advertising injury", or any injury, loss or damage arising out of the manufacture, importation, sales, distribution, gunsmithing, ownership, maintenance or use of firearms or "weapons".

> "Weapons" means instruments of an offensive or defensive nature, including but not limited to, batons, bow or crossbow, arrows, knives, stun guns, pepper spray, mace, tasers and/or swords.

Mot. Ex. B BERK 062.  In the Underlying Suit, Serrano alleges he was injured when another patron cut his throat. *See* Mot. Ex. A at BERK 003.  As the alleged activity involves use of a weapon, the exclusion applies to preclude coverage under Coverage A.[5]

b.   Assault and/or Battery, Abuse and/or Molestation Exclusion

> This exclusion provides, in pertinent part:

> The insurance does not apply to "bodily injury", "personal and advertising injury" or any claim for injury or damage arising out of or in connection with allegations of:

>> 1. a. "assault" and/or "battery", or out of any act or omission in connection with the prevention or suppression of such acts, whether caused by or at the instigation or direction of any insured, employees of any insured, patrons, or any other person whether or not such damages occurred at any premises owned or occupied by any insured; or

>> b. the failure to provide an environment safe from "assault" and/or "battery", including but not limited to the failure to warn of the dangers of the environment or the failure to provide adequate security or proper supervision; or

>> c. the failure to render or secure medical treatment or care necessitated by any "assault" and/or "battery"; or

>> d. the negligent or allegations of negligent:

>>> (a) employment; or
>>> (b) investigation; or

---

[5] Even if Coverage B and Coverage C applied, this exclusion would bar coverage under those provisions as well.

        (c) supervision; or
        (d) reporting to property authorities, or failure to so report; or
        (e) retention; or
        (f) hiring; or
        (g) training; or
        (h) placement

of any person for whom any insured is or ever was legally responsible and whose conduct would be excluded above.

"Assault" includes, but is not limited to, assault, sexual "abuse", sexual assault, intimidation, sexual harassment, verbal "abuse", and any threatened harmful or offensive contact between two or more persons, whether or not caused or committed by or at the instructions of, or at the direction of any insured or any other person.

"Battery" includes, but is not limited to, battery, sexual "abuse", sexual assault, intimidation, sexual harassment, verbal "abuse", and any threatened harmful or offensive contact between two or more persons, whether or not caused or committed by or at the instructions of, or at the direction of any insured or any other person.

In addition, "assault" and/or "battery" includes "bodily injury" resulting from the use of any force to protect persons or property.

Mot. Ex. B at BERK 063.  In the Underlying Suit, Serrano alleges he was assaulted by another patron.

*See* Mot. Ex. A at BERK 003.  This exclusion consequently applies to preclude coverage under Coverage A.[6]

c.  Total Liquor Liability Exclusion

This exclusion provides, in pertinent part:

"Bodily injury", "property damage" or "personal and advertising injury" or any injury, loss or damage arising out of or resulting from:

    1.  Causing or contributing to the intoxication of any person; or

    2.  The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

    3.  Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages; or

    4.  The use of alcoholic beverages; or

---

[6] Even if Coverage B and Coverage C applied, this exclusion would bar coverage under those provisions as well.

     5.  The insured's manufacturing, selling or distributing alcoholic beverages.

Mot. Ex. B at BERK 069.  In the Underlying Suit, Serrano alleges his injuries arise out of the service

of alcohol to an intoxicated patron.  *See* Mot. Ex. A at BERK 003.  This exclusion consequently

applies to preclude coverage under Coverage A.[7]

     Because Plaintiff has carried its burden of establishing that at least one policy exclusion

applies, the Court finds that Plaintiff's pleadings contain a sufficient basis for judgment in its favor

regarding its duty to defend Defendant in the Underlying Suit.

C.  *Whether Defendant States a Viable Claim For Relief Regarding Its Duty to Indemnify*

     "The duty to indemnify is a distinct and separate duty from the duty to defend."  *GuideOne*,

828 F. Supp. 2d at 862 (quoting *Roman Catholic Diocese of Dallas v. Interstate Fire & Cas. Co.*, 133

S.W.3d 887, 890 (Tex.App.—Dallas 2004, pet. denied)).  "[T]he insurer can resolve the indemnity

issue . . . by proving coverage is impossible in the underlying case."  *Id.* (citation omitted).  Here,

coverage is impossible in the underlying case because a number of policy exclusions apply.  The Court

therefore finds that Plaintiff's pleadings contain a sufficient basis for judgment in its favor regarding

its duty to indemnify Defendant in the Underlying Suit.

D.  *Whether Declaratory Relief is Appropriate*

     Because Plaintiff seeks a declaratory judgment, the Court must engage in a three–step process

to determine whether that relief is appropriate in this case.  *See Fid. & Guar. Life Ins. Co.*, 2014 WL

2091257, at *3 (citing *Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000)).  "First,

the court must determine whether the declaratory action is justiciable[,] . . . [meaning that] an 'actual

controversy' exists between the parties to the action.  *Orix Credit Alliance*, 212 F.3d at 895 (citing

*Rowan Companies, Inc. v. Griffin*, 876 F.2d 26, 27–28 (5th Cir. 1989).  If an "actual controversy"

---

    [7] Even if Coverage B and Coverage C applied, this exclusion would bar coverage under those
provisions as well.

exists, the district court must then "resolve whether it has the 'authority' to grant declaratory relief in the case presented." *Id.* (citing *Travelers Ins. Co. v. Louisiana Farm Bureau Fed'n, Inc.*, 996 F.2d 774, 776 (5th Cir. 1993)). In the third step, "the court has to determine how to exercise its broad discretion to decide or dismiss a declaratory judgment action." *Id.* (citing *Travelers Ins. Co.*, 996 F.2d at 778).

The Court must first determine if an "actual controversy" exists. "As a general rule, an actual controversy exists where 'a substantial controversy of sufficient immediacy and reality' [exists] between parties having adverse legal interests." *Fid. & Guar. Life Ins. Co.*, 2014 WL 2091257, at *3 (citation omitted) (alterations in original). "Whether particular facts are sufficiently immediate to establish an actual controversy is a question that must be addressed on a case–by–case basis." *Fid. & Guar. Life Ins. Co.*, 2014 WL 2091257, at *3 (quoting *Orix Credit Alliance*, 212 F.3d at 896).

Here, Defendant is also Defendant in the Underlying Suit. Because the Underlying Suit is currently ongoing, whether Plaintiff is legally obligated to defend and/or indemnify Defendant in that Underlying Suit is in question. An "actual controversy" thus exists.

Having determined that an "actual controversy" exists, the Court now must determine whether it has the requisite authority. "Under the second element of the *Orix Credit Alliance* test, a district court does not have authority to consider the merits of a declaratory judgment action when: (1) the declaratory defendant previously filed a cause of action in state court; (2) the state case involved the same issues as those in federal court; and (3) the district court is prohibited from enjoining the state proceedings under [28 U.S.C. §] 2283." *Id.* at *4 (alteration in original) (quoting *Sherwin–Williams Co. v. Holmes Cty.*, 343 F.3d 383, 388 n.1 (5th Cir. 2003)).

The Court is unaware of a similar, parallel, state court action still pending that is related to the instant case. The Court therefore has the authority to grant declaratory relief.

Finally, at the third step, the Court determines whether to exercise jurisdiction and grant the

requested relief.

> The Fifth Circuit has stated that, when determining whether to exercise or decline jurisdiction over a declaratory judgment action, a district court should consider several important factors, namely (1) whether a state action is pending in which all of the matters in controversy may be fully litigated; (2) whether the plaintiff filed the declaratory action suit in anticipation of a suit by the defendant; (3) whether the plaintiff engaged in forum shopping in bringing the suit; (4) whether possible inequities exist by allowing the declaratory plaintiff to gain precedence in time or to change forums; (5) whether the federal court is convenient for the parties and witnesses; (6) whether retaining the case in federal court will serve judicial economy; and (7) whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending.

*Id.* at *4 (citing *Sherwin–Williams*, 343 F.3d at 388).

After reviewing the record, the Court holds that the factors balance in favor of granting Plaintiff's request for declaratory judgment.  As noted above, there is no evidence of a similar, parallel, state court action still pending that is related to the instant case. There is no evidence that Plaintiff filed the action in anticipation of a suit, and there is no evidence or that Plaintiff has engaged in forum shopping in bringing suit.  Furthermore, fairness weighs in favor of granting default judgment, and a declaratory judgment as resolving the question before the Court today would further judicial efficiency.  A declaratory judgment in this case will settle the question of whether Plaintiff is legally obligated to defend and/or indemnify Defendant in that Underlying Suit.  This will not only foreclose a future suit from Defendant seeking to enforce the policy, but it may also resolve matters related to the Underlying Suit.

Because Defendant Consonants, LLC, D/B/A Tricky Falls has admitted all well–pleaded factual allegations in Plaintiff's Complaint as true, the Court concludes that Plaintiff has no duty to defend and/or indemnify Defendant in the Underlying Suit.

## IV.  CONCLUSION

In sum, the Court concludes that Defendant, having failed to answer Plaintiff's Complaint, is in default and that, accordingly, Plaintiff is entitled to an entry of default judgment.

**IT IS HEREBY ORDERED** that Plaintiff Berkeley Assurance Company's "Motion for Default Judgment Against Defendant Consonants, LLC D/B/A Tricky Falls" (ECF No. 16) is **GRANTED**.

**IT IS FURTHER ORDERED** that **DEFAULT JUDGMENT** is **HEREBY ENTERED** in favor of Plaintiff Berkeley Assurance Company, and against Defendant Consonants, LLC, D/B/A Tricky Falls, pursuant to Federal Rule of Civil Procedure 55(b)(2).

The Court **HEREBY DECLARES** that Plaintiff Berkeley Assurance Company has no duty under the terms of the commercial general liability policy issued from September 13, 2013 to September 13, 2014, to defend and/or indemnify Defendant Consonants, LLC, D/B/A Tricky Falls against the claims raised in the suit styled *Julio Cesar Serrano v. Tricky Falls*, No. 2014–DCV–0124, in the 168th Judicial District Court of El Paso County, Texas.

**IT IS FINALLY ORDERED** that the Clerk **SHALL CLOSE** the case.

**SO ORDERED and SIGNED this** _____9th_____ **day of December, 2014.**

DAVID C. GUADERRAMA
UNITED STATES DISTRICT JUDGE

- 13 -